# CHARLESTON.

MYRTLE M. BEANE v. H. B. KEYSER

(No. 5813)

Submitted February 15, 1927.   Decided February 22, 1927.

1. INSTRUCTIONS—*If Jury Has Been Instructed and Instructions Given or Refused Are Not Part of Record Certified As Complete, Presumption in Appellate Court is There Was no Error in Giving or Refusing Instructions; if Verdict Has Been Set Aside Without Stating Ground Therefor, Correctness of Order Must be Tested by Contents of Record.*

   If the jury has been instructed and the instructions given or refused are not a part of the record certified as complete, the presumption in the appellate court is that there was no error in giving or refusing instructions; and if the verdict has been set aside without stating the ground therefor, the correctness of the order must be tested by the contents of the record.   (p. 247).

2. CONTRIBUTORY NEGLIGENCE—*When Contributory Negligence Barring Recovery is Relied Upon and Facts Upon Which it is Predicated Are Ascertainable Only From Conflicting Testimony, Question is For Jury. It is Only When Facts Are Undisputed, or Are so Clearly Established As Not to Admit of Dispute, That Question Becomes One For Court.*

   When contributory negligence barring recovery is relied upon and the facts on which it is predicated are ascertainable only from conflicting testimony, the question is for the jury.   It is only when the facts are undisputed, or are so clearly established as not to admit of dispute, that the question becomes one for the court.   (p. 250).

3. CASES APPROVED AND APPLIED—

   Points 1 and 2 of Syllabus in *Ritter* v. *Hicks*, 102 W. Va. 541, 135 S. E. 601, approved and applied.   (p. 251).

Error to Circuit Court, Raleigh County.

Action by Myrtle M. Beane against H. B. Keyser; verdict for plaintiff was set aside by lower court, and plaintiff brings error.

*Reversed; verdict reinstated; judgment here.*

*Carl C. Sanders* and *David D. Ashworth*, for plaintiff in error.

*File, Goldsmith & Scherer*, for defendant in error.

LIVELY, JUDGE:

Myrtle M. Beane, plaintiff below and plaintiff in error, obtained a verdict for $2,500.00 against H. B. Keyser on February 26, 1926, for personal injuries sustained by her from being struck by defendant's automobile negligently operated by defendant's son on Neville Street in the city of Beckley. Defendant moved to set the verdict aside because of evidence admitted and refused, proper instructions refused, and because the verdict was contrary to the law and evidence. The court, on March 18, 1926, sustained the motion, and awarded defendant a new trial, to which plaintiff objected and excepted; and she now prosecutes this writ of error.

It does not appear on what ground the trial court set the verdict aside, and defendant's counsel argues that in as much as the motion for new trial was in part based upon refusal of instructions, and as no instructions appear in the record as having been given or refused, the presumption is that the court acted properly and set aside the verdict because of the giving of improper instructions, wherefore the order of the court setting aside the verdict should be sustained. We do not find any order reciting that instructions offered were refused. No bill of exceptions was taken by defendant incorporating the action of the court in that regard, if any was had. We have no instructions of any character before us, and the clerk certifies that the record printed is a complete transcript. The fact that the motion for a new trial is based in part on the refusal of instructions does not make the instructions a part of the record. Even if the motion had incorporated the instructions alleged to have been given and refused, that fact would not make these instructions a part of the record. "An instruction is not made part of the record on appeal by being copied into the motion for new trial." *Woods* v. *Matlock*, (Ind.) 48 N. E. 384; accord; *Butte Mt. Mining Co.* v. *Kenyon*, (Montana) 77 Pac. 319; *Pittsburgh Steel Co.* v. *Streety*, 61 Fla. 393. If, in fact, instructions were given or refused, the presumption is that the court instructed the jury correctly, in the absence of such instructions in the record. *Tenn. Cent. Ry. Co.* v. *Vanhoy*,

226 S. W. 225. ''The rule that it will be presumed that proper and sufficient instructions were given the jury, where a portion or all of the instructions given are absent from the record, is especially applicable where no exceptions were taken to the charge or instructions given.'' 4 C. J. p. 768-9, Sec. 2711, Title, ''Instructions not in record.'' Had the court refused to set aside the verdict, on what ground could defendant have based reversal on this present record? We can not presume that the trial court in granting the motion based its order upon some ground which was not properly before it. As before stated, the record is silent as to objection or exception to the giving or refusing of instructions, if any were in fact given or refused. Wherefore, we must look to the record to ascertain if there be error on which the order can be sustained. In the total absence of instruc- tions, it is manifest that the evidence contained in Bill of Exceptions No. 1 (the only bill) must be resorted to in order to sustain the order. Is the verdict contrary to the law and evidence? Exceptions to introduction and refusal of evi- dence noted in the trial, are not pointed out specifically as ground of error in the motion to set aside the verdict, are not incorporated in special bills of exceptions, and are not relied upon in the briefs; therefore they will not be con- sidered.

Defendant says the evidence does not warrant a finding of negligence on the part of the driver of the car; but if so, plaintiff was guilty of contributory negligence as a matter of law; and therefore the court's order setting aside the verdict was clearly right. The converse is asserted by plaintiff. This contention presents the controlling question, and the evidence will be closely scanned.

On April 3rd, 1925, about 8:30 P. M., plaintiff, accom- panied by her daughter aged about 5 years, attempted to cross Neville Street in the city of Beckley, from her home on the north side of the street to the south side, between cross streets on the east and west. The paved portion of the street between curbs at the place was 28 feet. The street was well lighted, the witnesses designating it as the ''*white*

*way,"* and the stores on either side afforded additional light. On the north side several cars were parked longitudinally with the curb, According to her evidence, corroborated by Mrs. and Mr. Coley, who were sitting in one of the parked cars near her, she stepped from the sidewalk on the north side between the cars there parked and proceeded to cross the street in a slightly diagonal direction with the ordinary speed of a pedestrian. Just as she was about to reach the other curb and step onto the sidewalk defendant's car struck her, knocking her down under the front of the car, causing serious injuries. She was pulled out from under the front fender by defendant's son, the driver, and others who saw the accident. The little child was also removed from before the left front wheel of the car, which had pinned her foot to the pavement. They were immediately taken by defendant's son in his car to a hospital, where upon casual examination she was found by the physician in charge to be only slightly injured. Serious results afterwards developed, according to another physician's testimony. She says that before attempting to cross the street she looked both ways, and saw defendant's car approaching from the west (up grade) at a point distant 225 feet, and another car approaching from the east, and just turning into Neville Street about 125 feet away. She then started across the street thinking she had ample time to cross, leading her child by the hand. She was familiar with the street and its traffic, and had often crossed it before, having lived for some time on its north side near the place of accident. The negligence charged is that defendant's son was running at a speed in excess of the ordinance limiting the speed of cars to 15 miles per hour; and that he carelessly and negligently failed to keep sufficient watch, and could have avoided injuring her, had he done so. He says he did not see her until he was about 2 feet from her, when he applied the brakes and stopped in a distance of 6 or 7 feet. The car approaching from the east (125 feet away when plaintiff started across) was a Ford coupe driven by Calloway, 21 years old, and accompanied by Metrick, both of whom witnessed the accident. They saw defendant's car

from the time plaintiff started across until it struck her; and Calloway says he first saw defendant's car when it was at Hedrick's house (afterwards found to be 225 feet from the place of the accident), and seeing that defendant's car would strike her unless its direction was changed, he drove to his side of the street and stopped, so as to give defendant's car ample room to pass. He says she was hit when she had almost reached the curb. He is corroborated by Metrick. Two other witnesses, Mrs. H. V. Coley and her husband, were in a car which was parked near where plaintiff entered the street between the parked cars, saw her and the child approaching on the sidewalk, saw her enter to go across and saw defendant's car approaching in the distance. They say she was in full view as she walked across the street leading the child, and there was nothing to obstruct the view of the occupant of the approaching car from also seeing her. Both say she was about to leave the pavement when struck, and Mr. Coley said he thought she was going to be hit when she walked across. Coley and wife think the defendant's car was approaching at a speed of from 20 to 25 miles an hour; Calloway and Metrick at from 15 to 20 miles; while defendant's son says about 12 miles: Foster, a witness for defendant, at 9 to 12 miles; Freeman, another defense witness, says 12 miles; and Clyde Warden, another defense witness, estimates the speed at from 10 to 12 miles. Henry Foster, a defense witness, saw the accident from the side walk on the north side of the street. He says she came from between the parked cars and stepped back to let a car pass, and after it got by she ran behind it in front of defendant's car, and "it looked like she fell in a hole there." Clyde Warden, who was walking with Foster, gives practically the same evidence. Defendant's son says he was on the south side of the street near the curb running at a rate of 12 miles an hour, and a car had passed him going in the opposite direction, and one or two other cars were in sight coming toward him, and just after he had passed the first car he saw plaintiff and the child over his left headlight about 2 feet in front and immediately put on the brake and then the emergency brake,

but could not avoid hitting her.   The theory of the defense was that Mrs. Beane waited until a car passed going west and immediately stepped out into the street and across it in front of defendant's car, and the passing of the first car prevented defendant's son from seeing her as she crossed. The plaintiff says she waited until a car passed, but before she entered the street she looked both ways, and saw defendant's car 225 feet away, and thought she could cross in safety.   It appears that at the time of the accident near the curb the street was clear of cars at that point except those that were parked on the opposite side, and the driver of defendant's car had ample room to avoid the accident had he seen plaintiff in time.   The jury viewed the street at the place of the accident.   On this conflicting evidence defendant's counsel contends that plaintiff was clearly guilty of contributory negligence as a conclusion of law.   Can we say that defendant's car was not exceeding 15 miles per hour, and that he could not, by the exercise of reasonable care, have seen plaintiff and her child and avoided driving into them?

In considering a motion to set aside a verdict all the verbal testimony in conflict with that of plaintiff must be discarded, and then if the evidence remaining together with all the justifiable inferences which the jury could reasonably draw therefrom is sufficient to sustain the verdict, the motion to set aside should be refused.   A verdict should not be set aside, when the evidence is contradictory, if when most favorably considered in support of the verdict, it does not still appear that the verdict was not warranted by the evidence.   *Gwynn* v. *Schwartz,* 32 W. Va. 487; *State* v. *Sullivan,* 55 W. Va. 597. Contributory negligence, when it depends upon questions of fact and testimony, is always for jury determination.   *Foley* v. *Huntington,* 51 W. Va. 396; *Snoddy* v. *Huntington,* 37 W. Va. 111.   Where the defense is contributory negligence and the facts on which it is based are to be ascertained from conflicting evidence, the question is one for the jury, and the verdict should not be disturbed unless it is clearly contrary to the decided preponderance of the evidence.   See numerous cases cited in 10 Enc. Dig. Va. & W. Va. Rep. p. 419. . Bear-

ing these well-settled rules in mind, we can perceive no ground on which the verdict can be disturbed. This case is very similar to and is governed by the principles so clearly stated by Judge HATCHER *in Ritter* v. *Hicks,* 102 W. Va. 541, 135 S. E. 601; and by the opinion in *Deputy* v. *Kimmell,* 73 W. Va. 595, annotated in 51 L. R. A. (N. S.) 989. It would serve no useful purpose to attempt to add to the reasoning or authorities appearing in these well considered cases. The judgment setting aside the verdict will be reversed, the verdict reinstated and judgment entered on it here.

*Reversed; verdict reinstated; judgment here.*