# CHARLESTON.

MERDITH SHUMAKER, *Infant, etc. v.* CHRYS A. THOMAS, *et al., Trading, etc.*

(No. 6462)

Submitted November 12, 1929. Decided November 19, 1929.

*Ezra E. Halstead* and *Donald G. Lazelle,* for defendant in error.

*Geo. R. Farmer* and *John J. Coniff,* for plaintiff in error.

LITZ, JUDGE:

The plaintiff obtained a verdict and judgment against the defendants (plaintiff in error) in the sum of $12,000.00 for personal injuries sustained by him when struck by a motor truck (owned and operated by the defendants), June 20, 1928, in the city of Morgantown on an approach to a bridge forming part of a public street while he was attempting to cross the street.

The testimony of plaintiff, who was but twelve years of age at the time of the accident, shows that before leaving the sidewalk he observed the truck approaching at a distance of probably 100 feet as he left the sidewalk, and after reaching the center of the street, realizing that he would be struck if he proceeded further, undertook to escape by turning back. The impact broke the left headlight and bent the left fender of the truck. The plaintiff was dragged and seriously injured. The left side of the truck seat was occupied by the driver, Clayton Mayle (21 years of age), the right side by another young man (Orville Sayre), and the center by Agnostina Garbarino, a girl student of the West Virginia University. Agnostina and Orville say they were looking at the home of Thoney Pietro to the left and did not see the boy cross the

street. Orville says Miss Garbarino was talking about the Pietro home. The driver admitted that "she was talking about the (Thoney Pietro) house and what fine people, and said: 'Isn't that a swell house'", but did not remember whether he was looking in the same direction or not. His theory of the accident, however, is that the boy came across the street immediately from behind another car coming from the opposite direction which obstructed his view. The presence of a second car is denied by the boy and other witnesses. The plaintiff and his brother, older than he, testified, without objection, that the driver told the plaintiff a few days afterward that he could have avoided the accident "if he had been watching his business." The plaintiff testified also that the car was going so fast he could not get out of its path. The driver answered in response to the question: "Do you know how fast you were going at that time?" "Well, I judge I was making around 15 miles an hour; I was not looking at the speedometer; I can't say the exact speed." Sayre stated that it was going from twenty to twenty-five miles per hour when it approached the bridge, and that the speed was about fifteen miles per hour when it struck the plaintiff. The distance the boy was dragged evidences excessive speed.

Alleged errors committed by the trial court in granting improper instructions on behalf of the plaintiff and refusing proper instructions for the defendant constitutes the chief grounds for reversal. Three instructions were given for the plaintiff over the objections of the defendants. Plaintiff's instruction No. 1, after reciting, as a preamble, the city ordinance fixing the speed limit of all vehicles at ten miles per hour on approaches to bridges, directed the jury to find for the plaintiff if they believed from the evidence that he was struck while the truck was being operated on the approach to the bridge in excess of ten miles per hour, in a reckless, careless and negligent manner, and that the driving of the truck in excess of ten miles per hour, in a reckless, careless and negligent manner was the proximate cause of the collision, "the plaintiff himself being without fault at the time of receiving the injury." Plaintiff's instruction No. 2 follows sub-

stantially the language of No. 1, after reciting, as its pre-amble, the state law fixing the speed limit of motor trucks over bridges at a rate of ten miles per hour. The defendants assert that each instruction ignores the defense of contributory negligence, or at least, as such defense, was presented therein by recital only, the jury may have understood the court to mean that the plaintiff was without fault. The latter point of criticism would merit serious consideration if there had been no other instructions fairly presenting this defense to the jury; but several other instructions, given at the instance of the defendants, told the jury to find for the defendants, notwithstanding negligence on their part, if the jury believed from the evidence that the plaintiff himself was guilty of negligence contributing approximately to his injury. The in-structions, therefore, in our opinion, considered as a whole, clearly submitted to the jury the issue of contributory negligence.

Plaintiff's instruction No. 3, detailed the elements of injury which the jury might take into consideration in fixing the damages. This instruction is objected to because it authorizes the jury to consider the physical and mental pain the plaintiff "is reasonably certain to suffer in the future as the result of the injury." We do not think this instruction is susceptible of the construction suggested by defendants that it assumes the plaintiff will suffer physical and mental pain in the future; but even such interpretation would not render the instruction improper, for the nature of the injuries are such as necessarily to cause the plaintiff physical and mental suffering the re-mainder of his life.

Defendants, however, rely most confidently for reversal upon the action of the court in refusing their instruction No. 6, as follows: "The Court instructs the jury that negligence on the part of the defendants' agent, Clayton Mayle, is the only basis of recovery by the plaintiff in this case, and if the jury believe from the evidence that the said Clayton Mayle did drive the defendants' automobile along the street upon which the accident occurred in a careful and prudent manner, using the same degree of care and caution in driving said

automobile that a man of ordinary prudence under the same or similar circumstances would have used and was so driving said automobile in such careful manner at and immediately before the time of said accident; and if you further believe from the evidence that the plaintiff stepped or ran in the way of said automobile at a time, when by the use of due care and diligence on the part of the driver, said automobile could not be brought to a pause or stopped or turned aside early enough to avoid injury to the plaintiff, then you shall find for the defendants.'' Other instructions were granted, at the instance of the defendants, submitting the issue of negligence. Moreover, the decided trend of the evidence shows (1) that the truck was being driven at an excessive rate of speed, and (2) that the attention of the driver was diverted from the road until ''immediately'' before the accident, too late to avoid the collision. The instruction under consideration tends to ignore these acts of negligence and the extreme youth of the plaintiff. The issues of negligence and contributory negligence, jury questions under the evidence, were fairly submitted by the instructions.

The judgment is, therefore, affirmed.

*Affirmed.*