Hazel TREDIGO, Appellant,

v.

William TIMBERLAKE, Appellee.

No. 8482.

United States Court of Appeals Fourth Circuit.

Argued Jan. 8, 1962.

Decided Feb. 6, 1962.

806

John B. Garden, Wheeling, W. Va. (Lester C. Hess, and Handlan, Garden, Matthews & Hess, Wheeling, W. Va., on brief), for appellant.

Russell B. Goodwin, Wheeling, W. Va. (Charles P. Mead, Thomas A. Goodwin, and Goodwin, Mead & Goodwin, Wheeling, W. Va., on brief), for appellee.

Before BRYAN and BELL, Circuit Judges, and PREYER, District Judge.

PREYER, District Judge.

This is an appeal by plaintiff in a pedestrian-automobile collision case from a directed verdict in favor of defendant at the conclusion of plaintiff's evidence. The question for decision is the correctness of the trial judge's holding that the plaintiff was guilty of contributory negligence as a matter of law.

These facts are essential to an understanding of the case. On the afternoon of December 24, 1957, in the City of Wheeling, the plaintiff and a male companion attempted to cross Market Street westwardly at a point where Market Street (a north-south street) is intersected by Lane 7, (an east-west Alley). Market Street at this point is 40 feet wide and Lane 7, where it intersects Market Street on the west side is 23.5 feet wide. At its intersection with Market Street on the east side, Lane 7 is 11.6 feet wide. Market Street is the main business street in the city and is a one-way street for north bound traffic. It is divided into four marked lanes of travel of equal width.

The plaintiff and her companion, Mr. McCoy, first approached and stood at the southeast corner of the intersection. They observed that a van type truck was blocking the first two lanes in its effort to back into a parking space. They proceeded to cross westwardly. On reaching the second lane, they saw a Chevrolet automobile stopped in the third lane just south of the "intersection." The operator of the Chevrolet motioned to them to cross over in front of the Chevrolet. They then moved across the third lane until they reached a position beside the line dividing the third and fourth traffic lanes. They stopped and looked to the south. Seeing no traffic moving in the fourth lane, they took two or three steps into the lane and were struck by the car operated by the defendant.

We agree with the ruling of the trial judge that there was sufficient evidence of primary negligence to go to the jury. Traffic was heavy. Many pedestrians were crossing the street in this area, both at intersections and in the middle of the block, to the defendant's knowledge. Traffic in the lanes to defendant's right was either stopped or "inching along." Defendant admitted approaching the intersection under these circumstances at 25 miles per hour. The speed limit was 20 miles per hour. In addition, plaintiff contends that defendant was negligent in that he violated a city ordinance which provides that it is unlawful to pass another vehicle which has stopped at a "marked crosswalk or

at any intersection" to permit a pedestrian to cross the roadway. The area where plaintiff crossed contains no marked crosswalk, and defendant argues that it is not an "intersection" since that term connotes the joining of streets or highways, and not the joining of lanes or alleys with streets or highways. We note that the city ordinances of Wheeling define the term "street or highway" as "every way set apart for public travel which is more than 18 feet in width", and that Lane 7 where it intersects Market Street from the West is 23.5 feet in width. However, the trial judge did not think it essential to rule on the applicability of this ordinance, apparently concluding that there was sufficient evidence of primary negligence to go to the jury on the question of whether defendant was operating at a speed that was reasonable under the circumstances. We concur with this conclusion.

The trial judge ruled further that plaintiff was guilty of contributory negligence as a matter of law. In his "Memorandum to Counsel," he states that "plaintiff was in a position of safety in front of the stopped car in the third lane of traffic of this one-way street, and, when she stepped therefrom, she was in the same position she would have been in stepping from a curb into the first lane of traffic. It was incumbent upon her to look before stepping into the position of danger and, having looked, to see what was plainly in view." The trial judge concluded that this was a fact situation controlled by the line of cases represented by Brake v. Cerra (W.Va.1960), 112 S.E. 2d 466 (where plaintiff alighted from a southbound vehicle near the middle of a city street at night and stepped in front of a northbound vehicle); and Slater v. Shirkey, 122 W.Va. 271, 8 S.E.2d 897 (where plaintiff stepped from behind a truck which was stopped in one lane of travel in an open country highway and was struck immediately by a car proceeding in the opposite direction).

We think the trial judge's analogy to this line of cases failed to give plaintiff the benefit she was entitled to of an interpretation of the facts most favorable to her. An eye-witness, Jo Ann Hughes, who viewed the accident through the front window of a store on the east side of the street and north of the "intersection", testified that plaintiff and her companion were walking at a "medium" speed across the fourth lane and were within 3 or 4 feet of the west curb when they were struck by the left front of the automobile. There is evidence, that is, that defendant was more than half way across the fourth lane when struck. Viewed in this light, the case appears more analogous to the line of cases represented by Walker v. Robertson, 141 W.Va. 563, 91 S.E.2d 468, and within the rubric announced in Stamper v. Bannister (W.Va.1961), 118 S.E.2d 313, that "cases where the evidence of contributory negligence barring recovery was held a matter of law for the court were usually cases in which the pedestrian was struck at or near the edge of the street or highway from which he had started to cross to the other side, and that in the cases where the pedestrian was struck at, or beyond the center of the highway, the question of contributory negligence is a matter for jury determination." See Bower v. Brannon, 141 W.Va. 435, 90 S.E.2d 342 and the cases there reviewed. Clearly this rule of thumb should not be applied mechanically or used as a substitute for analysis, yet it may serve as a convenient short-hand description of all the factors involved in determining on which side of the line a close case falls in the nebulous realm where the rights, duties, and responsibilities of the court and jury meet.

In Stamper the court went on to hold, as stated in its syllabus 3: "If the way appears clear to a pedestrian, he may proceed to cross a [street or] highway, and whether or not he is guilty of negligence in so doing is generally a question of fact for jury determination."

Of course, the pedestrian must determine whether "the way appears clear." He must not only look but is held to see what he should have seen.

In the instant case the plaintiff testified that she never saw the car that hit her. The evidence indicates that from the point in the third lane where plaintiff looked south before moving into the fourth lane she could see south on Market Street a distance of 218.5 feet. The defendant contends that the physical facts compel the conclusion that the car must have been in view when she looked and she negligently failed to see it. This conclusion follows if defendant's car, as he testified, traveled this distance in the fourth lane. But giving the plaintiff the benefit of the reasonable inferences from the evidentiary facts most favorable to her, we think a reasonable mind might find that defendant's car was in the third lane behind the Chevrolet and pulled into the fourth lane at some time after plaintiff looked to the south. Admittedly, there is little positive evidence of this. But not only did plaintiff and her companion testify that they looked and saw nothing; the witness Jo Ann Hughes testified that "I saw the back of their heads turn [just before entering the third lane], and after they stopped they stood there a minute and they waited, well, a couple of seconds, and they walked out around the car, and they started going on across the street, still looking down the street, and they just got about halfway across the fourth lane when this car came from nowhere. I don't know where it came from. I just saw it before it hit." She further testified she first saw defendant's car "about a car and a half lengths" before it struck plaintiff and her companion.

Plaintiff concedes that she failed to look continuously once she started crossing the fourth lane. Under the West Virginia law, however, this would not constitute contributory negligence as a matter of law. In Walker v. Robertson, supra, the court said:

> "The plaintiff testified she looked and did not see the approaching automobile of the defendant. Having looked, she was not required to keep looking." (Citing numerous West Virginia cases.)

This is a close case and a difficult one for a trial judge. But viewing all the circumstances in the light most favorable to the plaintiff, and bearing in mind that the burden of proof on the issue of contributory negligence is on the defendant, we think that the jury was entitled to pass on the question of whether the plaintiff exercised due care under the circumstances.

Reversed.