ELIZABETH HIGGS

*v.*

ELSIE L. WATKINS

(No. 10567)

Submitted September 15, 1953. Decided November 3, 1953.

*Furbee & Hardesty, Russell L. Furbee, C. H. Hardesty, Jr.,* for plaintiff in error.

*M. E. Morgan,* for defendant in error.

GIVEN, JUDGE:

Plaintiff, Elizabeth Higgs, instituted an action in the Circuit Court of Marion County for recovery of damages for personal injuries alleged to have resulted from negligence of defendant, Elsie L. Watkins, in the operation of an automobile. Upon the verdict of a jury, a judgment for $8,000.00 was entered on behalf of plaintiff. Upon petition of defendant this Court granted a writ of error and supersedeas.

About eight o'clock on the morning of April 30, 1952, plaintiff, who resides at 910 East Park Avenue, in the City of Fairmont, started across that avenue on foot. Before reaching the opposite side of the avenue she was struck by an automobile then being driven, in a southerly direction, by defendant, and very seriously injured, although no permanent injury appears to have resulted to her. The pavement of the avenue was dry at the time, and the weather was clear. The avenue where the injury occurred is approximately forty feet in width. The point

on the avenue at which plaintiff was struck was approximately one hundred and fifty feet southerly from the intersection of Morgantown Avenue with East Park Avenue, and probably west of the center line of East Park Avenue. Plaintiff's body, immediately after the accident, rested near the westerly curb of East Park Avenue. The course traveled by plaintiff in crossing East Park Avenue was diagonal, to her right. At the time of the accident there was a traffic light in operation at the intersection mentioned, and there was a pedestrian cross-walk, apparently indicated by markings, across East Park Avenue, immediately south of the intersection. There was no such cross-walk at the point where plaintiff attempted to cross the avenue.

Plaintiff's evidence is to the effect that her purpose in crossing the avenue was to convey a message to her husband; that she walked from her home to the top of five steps leading down from the yard of her home to the sidewalk, where she stopped "and I looked down and I looked up and saw the red light and there was no cars coming down the street"; that she then "headed across the street"; that she continued to look up and down the street; that she had a clear view of the street but did not then see defendant's car; that she "hurried across the street"; that she walked, did not run, across the street; that she "was nearly across the street, approximately three or four feet away from the curb on the other side when I saw the car coming and I raised my hands up and I guess I screamed; it was too late to go forward or backward"; that defendant's car was about three feet from her when she first observed it; and that defendant did not sound the horn of the automobile or give other warning. There is other substantial evidence supporting her testimony.

Defendant testified to the effect that after she had taken her son to school, she came out Morgantown Avenue and then down to East Park Avenue, where she "stopped for a red light"; that after the light changed

she proceeded southerly on East Park Avenue, and "all at once Mrs. Higgs ran out from behind the car to the left of my car, in front of it, and as soon as I saw her I immediately stepped on my brakes"; and that she "didn't see her until she got out in the middle of the street". Other witnesses testifying on behalf of defendant gave testimony to the effect that plaintiff ran from behind a line of cars, moving northerly on East Park Avenue, immediately in front of the car of defendant; that the car of defendant, immediately before the accident, was moving fifteen or twenty miles per hour; and that skid marks of defendant's car, near where the accident occurred, were twenty-four feet in length.

It is strongly contended by defendant that the verdict of the jury should have been set aside by the trial court, for the reasons that no negligence on the part of defendant was shown, and that, assuming the existence of primary negligence, plaintiff was guilty of contributory negligence, as a matter of law. We are of the opinion, however, that those questions were for jury determination.

Concededly, evidence of negligence of defendant is weak. In considering whether a prima facie case of negligence has been made, however, we must accept as true the evidence of plaintiff, and necessary inferences favorable to her arising from facts proved. In so doing we can not say that the evidence of such negligence is insufficient to support a verdict. In resolving the doubt, the jury would be warranted in considering the proximity of the intersection of East Park Avenue with Morgantown Avenue to the point of the injury, the operation of the traffic light at that intersection, the state of vehicular traffic at the time and place of the accident, the condition of the pavement, the weather, the speed of defendant's car, the fact that her view between the intersection and the point of the accident was not obstructed, and the duty of defendant to keep a lookout for pedestrians crossing East Park Avenue. See *Isgan*

v. *Jenkins,* 134 W. Va. 400, 59 S. E. 2d 689; *Davis* v. *Pugh,* 133 W. Va. 569, 57 S. E. 2d 9; *Yuncke* v. *Welker,* 128 W. Va. 299, 36 S. E. 2d 410; *Yoder* v. *Charleston Transit Co.,* 119 W. Va. 61, 192 S. E. 349; *Ritter* v. *Hicks,* 102 W. Va. 541, 135 S. E. 601; *Deputy* v. *Kimmell,* 73 W. Va. 595, 80 S. E. 919.

The evidence offered by defendant, if considered alone, would establish contributory negligence on the part of plaintiff, as a matter of law. That evidence, however, is in sharp conflict with the evidence offered by plaintiff. The question whether plaintiff is barred from recovery because of contributory negligence is, therefore, for jury determination. We are not unmindful of holdings in cases like *Yoder* v. *Charleston Transit Co., supra,* to the effect that a pedestrian crossing a street will be charged with having seen that which is in plain view. We think those holdings not controlling in the circumstances of the instant case. Here the question of whether plaintiff kept a proper lookout for vehicular traffic was for the jury. *Davis* v. *Pugh, supra; Yuncke* v. *Welker, supra; Ketterman* v. *Dry Fork Railroad Co.,* 48 W. Va. 606, 37 S. E. 683; *Snoddy* v. *City of Huntington,* 37 W. Va. 111, 16 S. E. 442; *Walker* v. *Bedwinek,* 114 W. Va. 100, 170 S. E. 908.

Plaintiff's Instruction No. 7 was given to the jury over objection of defendant. It reads: "The Court instructs the jury that it was the duty of the defendant, the driver of the Plymouth Automobile, to keep a lookout for persons at the time and place in question, and to exercise reasonable care in discovering and avoiding them; and if the jury believe from the evidence that the defendant saw, or by the exercise of reasonable care, could have seen that there was danger of her striking the plaintiff, and after she saw, or by the exercise of reasonable care should have seen, that there was such danger, the defendant failed to exercise ordinary care to prevent the same, and by reason of said failure on her part her automobile struck the plaintiff, and the plaintiff thereby was injured, then you should find for the plaintiff." De-

fendant contends that the giving of the instruction constituted prejudicial error, for the reason that no evidence was offered upon which an instruction presenting the last clear chance doctrine could be based.

This Court has consistently held that an instruction not based on competent evidence should not be given to the jury, notwithstanding the instruction may state correct principles of law. See *The Chesapeake & Ohio Railway Company* v. *Johnson,* 134 W. Va. 619, 60 S. E. 2d 203; *Tennessee Gas Transmission Co.* v. *Fox,* 134 W. Va. 106, 58 S. E. 2d 584; *Davis* v. *Pugh, supra; Wright* v. *Valan,* 130 W. Va. 466, 43 S. E. 2d 364; *Ritter* v. *Hicks, supra; Penix* v. *Grafton,* 86 W. Va. 278, 103 S. E. 106; *Bond* v. *National Fire Insurance Company,* 77 W. Va. 736, 88 S. E. 389; *Chadister* v. *Baltimore & Ohio Railroad Company,* 62 W. Va. 566, 59 S. E. 523; *Perdue* v. *Caswell Creek Coal & Coke Co.,* 40 W. Va. 372, 21 S. E. 870; *Kerr* v. *Lunsford,* 31 W. Va. 659, 8 S. E. 493, 2 L.R.A. 668. The rule is applicable in cases wherein it is contended that the last clear chance doctrine applies. See *Isgan* v. *Jenkins, supra; Moore* v. *Burriss,* 132 W. Va. 757, 54 S. E. 2d 23.

In *Juergens* v. *Front,* 111 W. Va. 670, 163 S. E. 618, the Court held: "The doctrine of the last clear chance implies a sufficient interval of time for both appreciation of the dangerous situation and effective effort to relieve it." In that case the Court quoted with approval a statement found in *Washington & Old Dominion Railway* v. *Thompson,* 136 Va. 597, 118 S. E. 76. The statement reads: "It should and must be emphasized that a plaintiff is not entitled to recover under the doctrine of the last clear chance upon a mere peradventure. * * * The burden is upon him to show affirmatively by a preponderance of the evidence which convinces the average mind, that by the use of ordinary care, after his peril was discovered, there was in fact a clear chance to save him. It is insufficient to show that there was a mere possibility of so doing." See

*Isgan* v. *Jenkins, supra; Meyn* v. *Dulaney-Miller Auto Company,* 118 W. Va. 545, 191 S. E. 558; *Milby* v. *Diggs,* 118 W. Va. 56, 189 S. E. 107. As we view the evidence in the instant case, defendant did not actually see plaintiff until within a few feet of her, clearly too late to avoid the injury. In that circumstance no room exists for the application of the last clear chance doctrine on the theory of actual discovery of the "dangerous situation" in time to avoid the injury. Neither do we believe there is sufficient evidence to support a verdict based upon the last clear chance doctrine, on the theory that defendant, by the exercise of reasonable care, should have discovered plaintiff's "dangerous situation" in time to have avoided the injury. No attempt is made to establish at what point on East Park Avenue plaintiff was, or how far defendant was from plaintiff, when plaintiff's "dangerous situation" should have been discovered by defendant. The jury could not have assumed that distance to be one hundred and fifty feet, the approximate distance from the intersection of East Park Avenue with Morgantown Avenue, since no evidence tends to establish at what point on East Park Avenue plaintiff was, if in fact she was then on East Park Avenue, at the time defendant was at the intersection. Also, the evidence seems clear that at the time of injury a line of automobiles was moving in a northerly direction on East Park Avenue and that plaintiff, in attempting to cross the avenue, passed between two of the cars in the line, or to the rear of the last car in the line. Defendant was under no duty to observe plaintiff before plaintiff entered the avenue, and no evidence tends to show that defendant could have observed plaintiff after she entered the avenue and before emerging from behind a line of automobiles. In the circumstances, we believe no basis exists in the evidence for an instruction embodying the last clear chance doctrine.

Defendant also contends that the quoted instruction is fatally defective for the reason that it fails to inform the jury that before they can find for plaintiff, on the

basis of the last clear chance doctrine, they must find from the evidence that there was sufficient time for defendant to have avoided the injury, after having discovered, or after the time when, by the exercise of reasonable care, she should have discovered, plaintiff's "dangerous situation". To reach the question we must assume the existence of evidence which would warrant the giving of an instruction based upon the last clear chance doctrine. In reality, the question has been answered by this Court in *Juergens* v. *Front, supra,* where it is clearly pointed out that before the last clear chance doctrine can be applied, there must exist evidence tending to show not only time for appreciation of the "dangerous situation", but also time for "effective effort to relieve it". The principle was reaffirmed in *Isgan* v. *Jenkins, supra.* In *Myers* v. *Charleston Transit Co.,* 128 W. Va. 564, 37 S. E. 2d 281, this Court held: "2. An instruction based upon the doctrine of last clear chance should not be given where there is no testimony indicating that the peril of the plaintiff became known, or should have become known, to the defendant in time for the defendant to have prevented the injury of the plaintiff." Applying the holding in the instant case, it is obvious that the instruction quoted is fatally defective, for the reason that it failed to inform the jury as to the element of the last clear chance doctrine relating to time for effective effort on the part of the defendant to have avoided the injury.

What we have said, we think, sufficiently answers defendant's contention as to the verdict being based on oral evidence inconsistent with physical facts proved, as well as other contentions.

We necessarily conclude that the judgment of the Circuit Court of Marion County must be reversed, the verdict of the jury set aside, and the defendant awarded a new trial.

*Reversed; verdict set
aside; new trial awarded.*